IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE SCOTTS COMPANY, | : | |
| Plaintiff, | : | Case No. C2:03-cv-1082 |
| v. | : | Judge Smith |
| ITT INDUSTRIES, INC., | : | Magistrate Judge Abel |
| Defendant. | : | |

## <u>ORDER</u>

This matter is before the Court on Defendant ITT Industries Inc.'s April 22, 2005

objections to the Magistrate Judge's report and recommendation on ITT's motion to

abstain from jurisdiction (doc. 29).  Plaintiff The Scotts Company filed this action

pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) seeking a declaration

that (1) ITT Industries, Inc. is obligated to provide, or cause its issuers to provide,

defense and indemnity to Scotts under the terms of the indemnity provision of the Sale

Contract for losses and expenses incurred in connection with the product liability suits

that have been filed and will be filed against Scotts, and (2) that the scope of any

settlement agreement or release that Scotts entered into was limited to environmental

cases and is not applicable to the products liability claims filed against it.

## I.  Overview.

This declaratory judgment action was filed by The Scotts Company ("Scotts")

against its former parent company, ITT Industries, Inc. ("ITT").  Scotts was sold by ITT

to CDS Acquisition Corp. In 1986.  The Sale Contract contained an indemnity provision.

1

Several personal injury products liability suits have been filed against Scotts that allegedly arise from the sale of products during ITT's period of ownership.  Scotts maintains that despite any potential insurance coverage, ITT is obligated to indemnify Scotts for the cost of litigating these claims.  In 2003, ITT filed suit in California state court.  The suit names approximately 40 insurance companies as defendants.  ITT argues that this action should be stayed or dismissed because Scotts' claims are already before the California state court.

## II.  Facts.

Scotts filed this declaratory judgment action on November 24, 2003 in the United States District Court for the Southern District of Ohio.  Jurisdiction is founded upon diversity of citizenship as Scotts is an Ohio corporation and ITT was organized under the laws of New York.  From April 7, 1971 to November 24, 1986, Scotts was a wholly owned subsidiary of ITT.  On November 24, 1986, ITT sold Scotts to CDS Acquisition Corp.  The document governing the sale was titled "Agreement of Purchase and Sale of Capital Stock between CDS Acquisition Corp. and ITT Corporation" ("Sale Contract").

The Sale Contract includes a provision, section 17, entitled "Indemnity for Insurable Events."  Scotts maintains that under this provision, ITT is required to "indemnify and provide, or cause to be provided by its insurers, a defense to Scotts for all losses arising out of 'insurable occurrences'" that occur on or before November 24, 1986.[1]  (Compl., ¶ 8).  The Sale Contract defines an insurable occurrence as "an

_____

[1]  The provision states:

2

occurrence that would customarily be insured against by corporations similarly situated with and in businesses similar to Scotts, as it existed after November 24, 1986." (Compl., ¶ 8).

For the last several years, product liability lawsuits have been filed against Scotts.  These suits allege that one or more of Scotts' lawn and garden products contained asbestos, which is responsible, in whole or in part, for causing bodily injuries.[2] (Compl., ¶ 9; Pl.'s Resp., p. 4).  Scotts denies liability for these claims and is defending the lawsuits.

In 2003, Scotts notified ITT of the civil actions, and Scotts maintains that "ITT has refused to provide Scotts with any assurance that it will fulfill its contractual obligations

---

> (a) ITT shall indemnify and provide, or cause to be provided by its insurer, defense to the Purchaser and the Company for all Losses (as defined in Section 8.1) arising out of Insurable Occurrences (as described below) on or prior to the Closing Date, other than workers compensation claims in the State of Ohio, which are covered by section 8.  The Purchaser and the Company shall indemnify and provide, or cause to be provided by its insurer, defense to ITT for all Losses (as defined in Section 8.1) arising out of Insurable Occurrences after the Closing Date, except for occurrences for which ITT has indemnified the Purchaser and the Company pursuant to Section 8.1. "Insurable Occurrence" shall mean an occurrence which would customarily be insured against by corporations similarly situated with and in businesses similar to the Company, as the Company exists after the Closing.

(Sale Contract § 17(a)).

[2]  Scotts has been named as a defendant in asbestos related products liability lawsuits in Illinois, Texas, California, and Mississippi.  (Pl.'s Resp., p. 4).  Many of the suits either fail to mention a date of asbestos exposure or state that the exposure occurred between 1971 and 1986.

in connection with the Underlying Product Liability Claims." (Compl., ¶ 10).[3] Scotts

claims that rather than indemnify it, it has received indications from ITT that ITT plans to

rely on another agreement entitled "Settlement and Release Agreement" to contest any

obligation to Scotts. Scotts states that the release agreement only applies to

environmental claims and does not affect ITT's obligations for the product liability

claims. (Compl., ¶ 11).

Scotts believes that the product liability claims are insurable occurrences under

the Sale Contract and seeks a declaration from this Court that (1) under the Sale

Contract, ITT is required to provide, or cause its insurers to provide, defense and

indemnity for pending and future products liability claims, and (2) the scope of the

Settlement and Release Agreement is limited to environmental claims and does not

apply to the product liability claims. Scotts also seeks the costs of bringing this action

and any other relief that the Court deems just and proper.

ITT rejects any indemnity obligation by relying on another provision in the Sale

Contract. Section 8 entitled "Indemnification" limits ITT's obligation to indemnify the

"Purchaser" for any claims that arise after the "Closing Date," November 24, 1986,

and/or claims filed six-years after the Closing Date because of the six-year limitation

contained in the sunset provision.[4]

---

[3] Scotts has submitted an affidavit with their response motion that states that "ITT has refused, and continues to refuse, to acknowledge any indemnification obligation arising from the Sale Contract." (Meyer Aff., ¶ 4).

[4] Section 8.1 states the following:

4

ITT will indemnify and hold the Purchaser and the Company (and their respective directors, officers, and employees and affiliates other than any directors, officers or employees of the Company who, by acting in a willful or grossly negligent manner, caused, or violated the law in connection with, a Loss) harmless from and against any and all claims, liabilities, losses, damages, costs, and expenses, including reasonable counsel fees (collectively, "Losses"), arising out of, or relating to:

(a) any failure or any breach by ITT of any representation or warranty, covenant, obligation or undertaking made by ITT In this Agreement,

(b) any lawsuit, action, proceeding, investigation or inquiry affecting the Company commenced on or prior to the Closing Date,

(c) any occurrence, conduct or condition existing on or prior to the Closing Date that

(i) violates, is alleged to violate or gives rise to a claim under any law, rule, ordinance, judgment, order or decree relating to handling or disposal of toxic or hazardous materials, air or water pollution or otherwise relating to protection of or damage to the environment (an "Environmental Regulation"), provided that no reimbursement shall be made under this clause (c)(i) of any amount (A) paid in response to an order from a governmental authority of competent jurisdiction to cause any occurrence, conduct or condition affecting the business of the Company and existing on or prior to the Closing Date to comply with any Environmental Regulation, if such amount (x) pays for a capital improvement which does not address the problem cited or (y) was not paid to address specifically the problem cited, or (B) budgeted by the Company on or prior to the date hereof and referenced in Schedule VII (except to the extent that the amount of the Loss exceeds the amount budgeted); or

(ii) is the basis for any common law tort, nuisance or similar claim in connection with which the Company is alleged to have released harmful, toxic or hazardous substances into the environment; or

(iii) is the basis for a claim that the claimant contracted a disease as a result of exposure to any product of or raw material used by the Company, except to the extent that such a claim arises out of third party use of a product after sale resulting in an occurrence after the Closing Date;

(d) any workers compensation claim in the State of Ohio relating to pre-Closing compensable occurrences.

Section 8.6 contains the sunset provision; it states in pertinent part:

5

Currently in California state court, there are two pending civil lawsuits that are at least tangentially related to this case.  The first lawsuit was filed in 1991.  The lawsuit is an insurance coverage action that includes more than 40 insurance companies.  The key issue is coverage for environmental claims.  In February 2003, ITT filed a second action.

That action involves the same 40 insurance carriers and seeks coverage for bodily injury and property damage losses arising from asbestos.  The action, *Cannon Electric, Inc., v. Affliated FM Ins. Co.,* (Case No. BC 290354, L.A. Sup. Ct), was brought by ITT to recover "100% of the costs and expenses of the asbestos-related suits asserted against it and its subsidiaries."  (David S. Cox Aff., ¶10).[5]  Therefore, ITT argues that the state court action seeks the "the precise relief Scotts seeks" in this

---

Survival of Representations; Termination.  The representations and warranties contained in this Agreement shall survive the Closing . . . . The indemnification obligations of any party under this Section 8, except with respect to represenations and warranties (which are governed by the preceding sentence) and the occurrences described in clause (b) of Section 8.1 (for which the indemnification shall survive until any lawsuit or other action is finally settled and not appealable), shall terminate and be of no further effect on the sixth anniversary of the Closing Date.

[5]  For example, on November 19, 2004, the California court ordered an insurer of ITT, Wausau, to defend or reimburse defense costs under primary insurances policies it issued to ITT. The policies cover ITT and its subsidiaries for all asbestos bodily injury lawsuits that (1) claim that products of ITT or its subsidiaries exposed the plaintiff(s) to asbestos between December 31, 1958 through December 31, 1973 and (2) lawsuits that make the same allegations but do not specify exposure dates.

action.[6]  (Def.'s Mot., p. 5).  On February 18, 2005, the California court granted leave for

ITT to amend its complaint.  The amendment, for the first time in the litigation, made

Scotts a party to the suit, both as a plaintiff and as a defendant.  (Def.'s Mot., p. 5). [7]

ITT argues that the California litigation will determine whether the product liability

---

[6]  The first paragraph of the amended complaint states the following:

> Plaintiffs seek a declaratory judgment, pursuant to California Code of Civil Procedure Section 1060, that the defendants are obligated to pay the costs and expenses including, without limitation, the costs of investigation, defense and legal liabilities, arising from or in connection with claims, suits, actions, causes of action and demands asserted against plaintiffs or which may in the future be asserted against plaintiffs alleging exposure to products allegedly containing or incorporating elements, minerals or other substances, including without limitation silica sand, asbestos and other materials and allegedly manufactured, sold, used or distributed by plaintiffs (the "Underlying Suits").

(ITT's 3d Amend. Cal. Compl., ¶ 1).

ITT also argues that other duplicative litigation exists.  Scotts filed a lawsuit against Wausau in the Ct. of C.P., Union County, in which Scotts is seeking defense and indemnity coverage for allegedly the same product liability actions in this case.  *See The Scotts Co. v. Employers Ins. of Wausau* (Case No. 2003 CV 0457, Ct of Common Pleas, Union County).  (Def.'s Mot., p. 6).

Scotts states that the litigation against Wausau was brought because, despite the order ITT obtained from the California court that stated that Wausau must defend ITT, Wausau has not reimbursed Scotts for any of its defense costs for the product liability claims.  Rather, Wausau maintains that Scotts and Wausau made an agreement in which Wausau bought out Scotts' rights under the Wausau policies.  Scotts disputes that such a buyout or agreement took place and has brought the Union County action for bad faith and breach of contract.  (Pl.'s Resp., p. 5).

[7]  Interestingly, the leave to amend was granted 15 months after this action was commenced and one day prior to ITT's filing of their reply brief for this Court to stay or abstain.  ITT's reply states on page 3 that "Scotts is both a party plaintiff and a party defendant to the Los Angeles Action."

7

lawsuits are insurable occurrences.   Among other relief, ITT is seeking declaratory relief and breach of contract claims for ITT's insurers' failure to provide coverage for the Scotts product liability lawsuits.

## III.  ITT's Arguments

1. This Court should abstain from exercising jurisdiction based on the five factors stated in *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807 (6th Cir. 2004), and used by courts in Sixth Circuit to determine when abstention from a declaratory judgment action is appropriate.

2. This Court should consider the fact that any obligation owed to Scotts, expired on the sixth anniversary of the Closing Date of the sale of Scotts, and since the asbestos product liability claims were filed after the date contained in the sunset provision, Scotts' claim for indemnity from ITT must fail. (*See* Sale Contract § 8.6(b)).

## IV.  Discussion.

"The Declaratory Judgment Act provides that a court 'may declare the rights and other legal relations of any interested party seeking such declaration." *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 453 (6 th Cir. 2003) (quoting 28 U.S.C. § 2201(a)).  Based on the permissive language used in the Act, a court's decision whether to hear a declaratory judgment action is discretionary.  *Bituminous Cas. Corp.*, 373 F.3d at 812.  The Sixth Circuit has identified five factors that are supposed to aid the court in its determination of whether to exercise its jurisdiction.  *Id.*

The five *Bituminous* factors are as follows:

(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would

8

increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Id.* at 813.

### 1) Would Judgment Settle this Controversy?

ITT argues that judgment by this Court would not settle the controversy. Scotts is seeking a declaration that (1) ITT is obligated to provide, or cause its issuers to provide, defense and indemnity to Scotts under the terms of the indemnity provision of the Sale Contract for losses and expenses incurred in connection with the product liability suits that have been filed and will be filed against Scotts, and (2) that the scope of any settlement agreement or release that Scotts entered into was limited to environmental cases and is not applicable to the products liability claims filed against it.

Scotts asserts that ITT is contractually bound to indemnify Scotts for the types of claims that were typically insured regardless of the outcome of the California action. In the California action, ITT is seeking to obtain insurance coverage for Scotts; however, ITT's potential duty to indemnify Scotts is separate from ITT's duty to cause its insurers to provide coverage to Scotts, hence the use of the word "or" in the Sale Contract's provision. A declaration that states that ITT either does or does not have a duty to indemnify Scotts would settle this portion of the controversy between the parties.

Scotts also entered into release agreements with one or more of the insurance carriers that had policies in force during the period of ITT's ownership. The carriers that entered into release agreements with Scotts have been identified by ITT as Wausau, Liberty Mutual and Pacific Employers. The scope of these release agreements is in

9

dispute.  Scotts maintains that the releases only release the insurance carriers from liability that arise from environmental claims and the asbestos product liability actions do not qualify as environmental claims.  ITT, on the other hand, maintains that these releases encompass environmental and asbestos related claims as well as any potential indemnity obligation of ITT.   A declaration as to whether the releases involve the asbestos product liability actions would settle this portion of the controversy.  This factor weighs in favor of this Court exercising jurisdiction.

### 2) Would the Declaration Serve a Useful Purpose in Clarifying the Parties' Legal Relations?

A declaratory judgment would serve a useful purpose in defining Scotts and ITT's legal relations.  ITT relies on the *Bituminous* case when it argues that federal courts generally abstain from exercising jurisdiction when presented with contingent requests for declaratory relief that seek advance opinions regarding whether a party may owe an indemnity obligation if certain conditions are present.  *See Bituminous Cas. Corp,* 373 F.3d at 812.  *Bituminous* is factually distinguishable from the current case.  In *Bituminous,* the federal declaratory action was being brought against the insurance carrier by the party being sued for the underlying claims.  *Id.*  ITT is not the insurance carrier.  Moreover, the court in *Bituminous* stated a preference that the indemnity issue should be resolved in the court hearing the underlying claim.  The California court is not hearing the underlying claims; it is hearing disputes between ITT and ITT's insurance providers.  The underlying claims are the asbestos product liability actions being filed against Scotts throughout the country.

10

ITT may have a current obligation to provide a defense for Scotts in the underlying actions.  Deciding whether ITT has a such a duty certainly clarifies the parties' legal relations.  Moreover, a determination with regard to the scope of the release agreements may lessen any indemnity obligation owed to Scotts.  This factor weighs in favor of this Court's exercise of jurisdiction.

### 3) Is this Action being Used for "Procedural Fencing" or "*Res Judicata*"?

ITT suggest that Scotts is attempting to undertake piecemeal litigation.  Accordingly, both parties address whether Ohio is a convenient forum.  ITT maintains that both ITT and Scotts have offices in Los Angeles and the insurance carrier paperwork is located in California because of the pending litigation.  However, until February 2005, Scotts was not a party to the California action.  Scotts filed this suit in this forum in November 2003.  Ohio appears to be a logical forum choice.  Because Scotts is an Ohio corporation, Ohio is a convenient and practical forum for deciding this issue.  Ohio is also an efficient forum.  Moreover, ITT's February 2005 amendment to its California complaint asked the California court to forego any decision on ITT's indemnity obligations to Scotts until all other issues have been resolved.   Accordingly, if this Court abstains from exercising its jurisdiction, it could be years and years before Scotts sees any relief.  Filing here appears to be a logical choice and nothing suggest that Scotts has an improper motive, such as procedural fending or racing for *res judicata*, when it chose to file here.  This factor weighs in favor of this Court's exercise of jurisdiction.

### 4)  Would Hearing this Declaratory Judgment Action Increase the Friction Between the State and Federal Courts?

11

In determining if an exercise of jurisdiction would increase the friction between state and federal courts three additional factors considered. These factors are referred to as the *Scottsdale* factors:[8]

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether the federal common or statutory law dictates resolution of the declaratory action.

*Northland Ins. Co.*, 327 F.3d at 454.

Here the underlying suits are the asbestos product liability claims. However, as ITT argues, whether ITT has any duty to indemnify Scotts will turn on whether the underlying asbestos claims are insurable occurrences. If this Court decides to exercise jurisdiction, it will have to decide whether asbestos claims are insurable occurrences as defined by the Sale Contract. This is a matter of state law. However, the Sale Contract states that it is to be construed according to the laws of New York. The California court is in no better of a position to interpret New York law than this Court. However, this is a diversity case, and only matters of state law are being applied to any factual determinations. Consequently, this factor weighs in favor of abstention.[9]

---

[8] These factors are referred to the *Scottsdale* factors because they were set forth in the case *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

[9] ITT also argues that if this Court exercises jurisdiction, it will have to decide when the asbestos injuries occurred. However, this is not the case. The issue before the Court is whether ITT has to indemnify Scotts for the defense of asbestos product liability suits that arise prior to the Closing Date of the Sale Contract. This Court is not being asked to determine in which underlying actions ITT's duty is triggered.

**5) Whether an Alternative Remedy Exists that is Better or More Effective?**

ITT argues that the California court provides an alternative remedy that is either better or more effective than any remedy this Court can provide.  It maintains that the California court is already deciding whether the asbestos product liability claims are insurable occurrences; therefore, it is in a better position to decide whether ITT owes any indemnification obligation to Scotts.  However, ITT, in its amended complaint, asks the California court to hold off on any declaration as to its potential indemnification obligation until all the other issues in the California action have been resolved.  (ITT's 3d Amend. Cal. Compl., ¶ 211).  Accordingly, it could be years before the California court undertakes any resolution regarding ITT's obligation to Scotts.  ITT may have a present duty to indemnify Scotts and putting the issue off for an indeterminate amount of time detracts from any argument that the California court is able to provide a superior remedy.  Further, if this Court makes a declaration regarding ITT's indemnity obligation towards Scotts, there has been no evidence presented that shows that this declaration would interfere with the California court's ability to resolve the insurance carriers' duties owed to ITT.  This Court can provide a superior remedy to that of the California court; this factor weighs in favor of this Court's exercise of jurisdiction.

**V.  Expiration of the Obligations.**

ITT argues that any duty ITT had to indemnify Scotts expired six years after the Closing Date of the Sale Contract as stated in the sunset provision, § 8.6.  However, whether any duties are owed to Scotts has expired is a determination that can be raised later by the parties either in a motion to dismiss or in a motion for summary judgment.

13

This argument was not raised until ITT's reply brief objecting to the Magistrate Judge's report and recommendation, and Scotts has not had the opportunity to respond to ITT's contentions.  At the present time, this Court will not decide the issue.

**VI.  Conclusion.**

Overall, the *Bituminous* factors weigh in favor of this Court's continued exercise of jurisdiction in the matter.  Accordingly, the Magistrate Judge's April 8, 2005 Report and Recommendation (doc. 28) is **ADOPTED**.  Defendant's April 22, 2005 objections to the Magistrate Judge's Report and Recommendation (doc. 29) are **OVERRULED**.


s/George C. Smith
George C. Smith, Judge
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE SCOTTS COMPANY,                        :

         Plaintiff,                        :        Case No. C2:03-cv-1082

         v.                        :        Judge Smith

ITT INDUSTRIES, INC.,                        :        Magistrate Judge Abel

         Defendant.                        :

## ORDER

This matter is before the Court on Defendant ITT Industries Inc.'s April 22, 2005

objections to the Magistrate Judge's report and recommendation on ITT's motion to

abstain from jurisdiction (doc. 29).  Plaintiff The Scotts Company filed this action

pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) seeking a declaration

that (1) ITT Industries, Inc. is obligated to provide, or cause its issuers to provide,

defense and indemnity to Scotts under the terms of the indemnity provision of the Sale

Contract for losses and expenses incurred in connection with the product liability suits

that have been filed and will be filed against Scotts, and (2) that the scope of any

settlement agreement or release that Scotts entered into was limited to environmental

cases and is not applicable to the products liability claims filed against it.

**I.  Overview.**

This declaratory judgment action was filed by The Scotts Company ("Scotts")

against its former parent company, ITT Industries, Inc. ("ITT").  Scotts was sold by ITT

to CDS Acquisition Corp. In 1986.  The Sale Contract contained an indemnity provision.

1

Several personal injury products liability suits have been filed against Scotts that allegedly arise from the sale of products during ITT's period of ownership. Scotts maintains that despite any potential insurance coverage, ITT is obligated to indemnify Scotts for the cost of litigating these claims. In 2003, ITT filed suit in California state court. The suit names approximately 40 insurance companies as defendants. ITT argues that this action should be stayed or dismissed because Scotts' claims are already before the California state court.

## II. Facts.

Scotts filed this declaratory judgment action on November 24, 2003 in the United States District Court for the Southern District of Ohio. Jurisdiction is founded upon diversity of citizenship as Scotts is an Ohio corporation and ITT was organized under the laws of New York. From April 7, 1971 to November 24, 1986, Scotts was a wholly owned subsidiary of ITT. On November 24, 1986, ITT sold Scotts to CDS Acquisition Corp. The document governing the sale was titled "Agreement of Purchase and Sale of Capital Stock between CDS Acquisition Corp. and ITT Corporation" ("Sale Contract").

The Sale Contract includes a provision, section 17, entitled "Indemnity for Insurable Events." Scotts maintains that under this provision, ITT is required to "indemnify and provide, or cause to be provided by its insurers, a defense to Scotts for all losses arising out of 'insurable occurrences'" that occur on or before November 24, 1986.[1] (Compl., ¶ 8). The Sale Contract defines an insurable occurrence as "an

---

[1] The provision states:

2

occurrence that would customarily be insured against by corporations similarly situated

with and in businesses similar to Scotts, as it existed after November 24, 1986."

(Compl., ¶ 8).

   For the last several years, product liability lawsuits have been filed against

Scotts.  These suits allege that one or more of Scotts' lawn and garden products

contained asbestos, which is responsible, in whole or in part, for causing bodily injuries.[2]

(Compl., ¶ 9; Pl.'s Resp., p. 4).  Scotts denies liability for these claims and is defending

the lawsuits.

   In 2003, Scotts notified ITT of the civil actions, and Scotts maintains that "ITT has

refused to provide Scotts with any assurance that it will fulfill its contractual obligations

---

         (a) ITT shall indemnify and provide, or cause to be provided by its
         insurer, defense to the Purchaser and the Company for all Losses (as
         defined in Section 8.1) arising out of Insurable Occurrences (as
         described below) on or prior to the Closing Date, other than workers
         compensation claims in the State of Ohio, which are covered by
         section 8.  The Purchaser and the Company shall indemnify and
         provide, or cause to be provided by its insurer, defense to ITT for all
         Losses (as defined in Section 8.1) arising out of Insurable Occurrences
         after the Closing Date, except for occurrences for which ITT
         has indemnified the Purchaser and the Company pursuant to Section 8.1.
         "Insurable Occurrence" shall mean an occurrence which would
         customarily be insured against by corporations similarly situated with
         and in businesses similar to the Company, as the Company exists after
         the Closing.

      (Sale Contract § 17(a)).

      [2]  Scotts has been named as a defendant in asbestos related products liability
   lawsuits in Illinois, Texas, California, and Mississippi.  (Pl.'s Resp., p. 4).  Many of the
   suits either fail to mention a date of asbestos exposure or state that the exposure
   occurred between 1971 and 1986.

in connection with the Underlying Product Liability Claims." (Compl., ¶ 10).[3] Scotts

claims that rather than indemnify it, it has received indications from ITT that ITT plans to

rely on another agreement entitled "Settlement and Release Agreement" to contest any

obligation to Scotts. Scotts states that the release agreement only applies to

environmental claims and does not affect ITT's obligations for the product liability

claims. (Compl., ¶ 11).

     Scotts believes that the product liability claims are insurable occurrences under

the Sale Contract and seeks a declaration from this Court that (1) under the Sale

Contract, ITT is required to provide, or cause its insurers to provide, defense and

indemnity for pending and future products liability claims, and (2) the scope of the

Settlement and Release Agreement is limited to environmental claims and does not

apply to the product liability claims. Scotts also seeks the costs of bringing this action

and any other relief that the Court deems just and proper.

     ITT rejects any indemnity obligation by relying on another provision in the Sale

Contract. Section 8 entitled "Indemnification" limits ITT's obligation to indemnify the

"Purchaser" for any claims that arise after the "Closing Date," November 24, 1986,

and/or claims filed six-years after the Closing Date because of the six-year limitation

contained in the sunset provision.[4]

---

    [3] Scotts has submitted an affidavit with their response motion that states that
"ITT has refused, and continues to refuse, to acknowledge any indemnification
obligation arising from the Sale Contract." (Meyer Aff., ¶ 4).

    [4] Section 8.1 states the following:

4

ITT will indemnify and hold the Purchaser and the Company (and their respective directors, officers, and employees and affiliates other than any directors, officers or employees of the Company who, by acting in a willful or grossly negligent manner, caused, or violated the law in connection with, a Loss) harmless from and against any and all claims, liabilities, losses, damages, costs, and expenses, including reasonable counsel fees (collectively, "Losses"), arising out of, or relating to:

(a) any failure or any breach by ITT of any representation or warranty, covenant, obligation or undertaking made by ITT In this Agreement,

(b) any lawsuit, action, proceeding, investigation or inquiry affecting the Company commenced on or prior to the Closing Date,

(c) any occurrence, conduct or condition existing on or prior to the Closing Date that

(i) violates, is alleged to violate or gives rise to a claim under any law, rule, ordinance, judgment, order or decree relating to handling or disposal of toxic or hazardous materials, air or water pollution or otherwise relating to protection of or damage to the environment (an "Environmental Regulation"), provided that no reimbursement shall be made under this clause (c)(i) of any amount (A) paid in response to an order from a governmental authority of competent jurisdiction to cause any occurrence, conduct or condition affecting the business of the Company and existing on or prior to the Closing Date to comply with any Environmental Regulation, if such amount (x) pays for a capital improvement which does not address the problem cited or (y) was not paid to address specifically the problem cited, or (B) budgeted by the Company on or prior to the date hereof and referenced in Schedule VII (except to the extent that the amount of the Loss exceeds the amount budgeted); or

(ii) is the basis for any common law tort, nuisance or similar claim in connection with which the Company is alleged to have released harmful, toxic or hazardous substances into the environment; or

(iii) is the basis for a claim that the claimant contracted a disease as a result of exposure to any product of or raw material used by the Company, except to the extent that such a claim arises out of third party use of a product after sale resulting in an occurrence after the Closing Date;

(d) any workers compensation claim in the State of Ohio relating to pre-Closing compensable occurrences.

Section 8.6 contains the sunset provision; it states in pertinent part:

5

Currently in California state court, there are two pending civil lawsuits that are at least tangentially related to this case.  The first lawsuit was filed in 1991.  The lawsuit is an insurance coverage action that includes more than 40 insurance companies.  The key issue is coverage for environmental claims.  In February 2003, ITT filed a second action.

That action involves the same 40 insurance carriers and seeks coverage for bodily injury and property damage losses arising from asbestos.  The action, *Cannon Electric, Inc., v. Affliated FM Ins. Co.,* (Case No. BC 290354, L.A. Sup. Ct), was brought by ITT to recover "100% of the costs and expenses of the asbestos-related suits asserted against it and its subsidiaries."  (David S. Cox Aff., ¶10).[5]  Therefore, ITT argues that the state court action seeks the "the precise relief Scotts seeks" in this

---

Survival of Representations; Termination.  The representations and warranties contained in this Agreement shall survive the Closing . . . . The indemnification obligations of any party under this Section 8, except with respect to represenations and warranties (which are governed by the preceding sentence) and the occurrences described in clause (b) of Section 8.1 (for which the indemnification shall survive until any lawsuit or other action is finally settled and not appealable), shall terminate and be of no further effect on the sixth anniversary of the Closing Date.

[5] For example, on November 19, 2004, the California court ordered an insurer of ITT, Wausau, to defend or reimburse defense costs under primary insurances policies it issued to ITT. The policies cover ITT and its subsidiaries for all asbestos bodily injury lawsuits that (1) claim that products of ITT or its subsidiaries exposed the plaintiff(s) to asbestos between December 31, 1958 through December 31, 1973 and (2) lawsuits that make the same allegations but do not specify exposure dates.

action.[6]  (Def.'s Mot., p. 5).  On February 18, 2005, the California court granted leave for

ITT to amend its complaint.  The amendment, for the first time in the litigation, made

Scotts a party to the suit, both as a plaintiff and as a defendant.  (Def.'s Mot., p. 5). [7]

ITT argues that the California litigation will determine whether the product liability

---

[6]  The first paragraph of the amended complaint states the following:

> Plaintiffs seek a declaratory judgment, pursuant to California Code of
> Civil Procedure Section 1060, that the defendants are obligated to pay
> the costs and expenses including, without limitation, the costs of
> investigation, defense and legal liabilities, arising from or in connection
> with claims, suits, actions, causes of action and demands asserted
> against plaintiffs or which may in the future be asserted against
> plaintiffs alleging exposure to products allegedly containing or
> incorporating elements, minerals or other substances, including without
> limitation silica sand, asbestos and other materials and allegedly
> manufactured, sold, used or distributed by plaintiffs (the "Underlying
> Suits").

(ITT's 3d Amend. Cal. Compl., ¶ 1).

ITT also argues that other duplicative litigation exists.  Scotts filed a lawsuit
against Wausau in the Ct. of C.P., Union County, in which Scotts is seeking defense
and indemnity coverage for allegedly the same product liability actions in this case.  *See
The Scotts Co. v. Employers Ins. of Wausau* (Case No. 2003 CV 0457, Ct of Common
Pleas, Union County).  (Def.'s Mot., p. 6).

Scotts states that the litigation against Wausau was brought because, despite the
order ITT obtained from the California court that stated that Wausau must defend ITT,
Wausau has not reimbursed Scotts for any of its defense costs for the product liability
claims.  Rather, Wausau maintains that Scotts and Wausau made an agreement in
which Wausau bought out Scotts' rights under the Wausau policies.  Scotts disputes
that such a buyout or agreement took place and has brought the Union County action
for bad faith and breach of contract.  (Pl.'s Resp., p. 5).

[7]  Interestingly, the leave to amend was granted 15 months after this action was
commenced and one day prior to ITT's filing of their reply brief for this Court to stay or
abstain.  ITT's reply states on page 3 that "Scotts is both a party plaintiff and a party
defendant to the Los Angeles Action."

7

lawsuits are insurable occurrences. Among other relief, ITT is seeking declaratory relief and breach of contract claims for ITT's insurers' failure to provide coverage for the Scotts product liability lawsuits.

### III. ITT's Arguments

1. This Court should abstain from exercising jurisdiction based on the five factors stated in *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807 (6th Cir. 2004), and used by courts in Sixth Circuit to determine when abstention from a declaratory judgment action is appropriate.

2. This Court should consider the fact that any obligation owed to Scotts, expired on the sixth anniversary of the Closing Date of the sale of Scotts, and since the asbestos product liability claims were filed after the date contained in the sunset provision, Scotts' claim for indemnity from ITT must fail. (*See* Sale Contract § 8.6(b)).

### IV. Discussion.

"The Declaratory Judgment Act provides that a court 'may declare the rights and other legal relations of any interested party seeking such declaration." *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 453 (6 th Cir. 2003) (quoting 28 U.S.C. § 2201(a)). Based on the permissive language used in the Act, a court's decision whether to hear a declaratory judgment action is discretionary. *Bituminous Cas. Corp.*, 373 F.3d at 812. The Sixth Circuit has identified five factors that are supposed to aid the court in its determination of whether to exercise its jurisdiction. *Id.*

The five *Bituminous* factors are as follows:

(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would

8

increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Id.* at 813.

### 1) Would Judgment Settle this Controversy?

ITT argues that judgment by this Court would not settle the controversy. Scotts is seeking a declaration that (1) ITT is obligated to provide, or cause its issuers to provide, defense and indemnity to Scotts under the terms of the indemnity provision of the Sale Contract for losses and expenses incurred in connection with the product liability suits that have been filed and will be filed against Scotts, and (2) that the scope of any settlement agreement or release that Scotts entered into was limited to environmental cases and is not applicable to the products liability claims filed against it.

Scotts asserts that ITT is contractually bound to indemnify Scotts for the types of claims that were typically insured regardless of the outcome of the California action. In the California action, ITT is seeking to obtain insurance coverage for Scotts; however, ITT's potential duty to indemnify Scotts is separate from ITT's duty to cause its insurers to provide coverage to Scotts, hence the use of the word "or" in the Sale Contract's provision. A declaration that states that ITT either does or does not have a duty to indemnify Scotts would settle this portion of the controversy between the parties.

Scotts also entered into release agreements with one or more of the insurance carriers that had policies in force during the period of ITT's ownership. The carriers that entered into release agreements with Scotts have been identified by ITT as Wausau, Liberty Mutual and Pacific Employers. The scope of these release agreements is in

9

dispute. Scotts maintains that the releases only release the insurance carriers from liability that arise from environmental claims and the asbestos product liability actions do not qualify as environmental claims. ITT, on the other hand, maintains that these releases encompass environmental and asbestos related claims as well as any potential indemnity obligation of ITT. A declaration as to whether the releases involve the asbestos product liability actions would settle this portion of the controversy. This factor weighs in favor of this Court exercising jurisdiction.

### 2) Would the Declaration Serve a Useful Purpose in Clarifying the Parties' Legal Relations?

A declaratory judgment would serve a useful purpose in defining Scotts and ITT's legal relations. ITT relies on the *Bituminous* case when it argues that federal courts generally abstain from exercising jurisdiction when presented with contingent requests for declaratory relief that seek advance opinions regarding whether a party may owe an indemnity obligation if certain conditions are present. *See Bituminous Cas. Corp,* 373 F.3d at 812. *Bituminous* is factually distinguishable from the current case. In *Bituminous,* the federal declaratory action was being brought against the insurance carrier by the party being sued for the underlying claims. *Id.* ITT is not the insurance carrier. Moreover, the court in *Bituminous* stated a preference that the indemnity issue should be resolved in the court hearing the underlying claim. The California court is not hearing the underlying claims; it is hearing disputes between ITT and ITT's insurance providers. The underlying claims are the asbestos product liability actions being filed against Scotts throughout the country.

10

ITT may have a current obligation to provide a defense for Scotts in the underlying actions.  Deciding whether ITT has a such a duty certainly clarifies the parties' legal relations.  Moreover, a determination with regard to the scope of the release agreements may lessen any indemnity obligation owed to Scotts.  This factor weighs in favor of this Court's exercise of jurisdiction.

### 3) Is this Action being Used for "Procedural Fencing" or "*Res Judicata*"?

ITT suggest that Scotts is attempting to undertake piecemeal litigation. Accordingly, both parties address whether Ohio is a convenient forum.  ITT maintains that both ITT and Scotts have offices in Los Angeles and the insurance carrier paperwork is located in California because of the pending litigation.  However, until February 2005, Scotts was not a party to the California action.  Scotts filed this suit in this forum in November 2003.  Ohio appears to be a logical forum choice.  Because Scotts is an Ohio corporation, Ohio is a convenient and practical forum for deciding this issue.  Ohio is also an efficient forum.  Moreover, ITT's February 2005 amendment to its California complaint asked the California court to forego any decision on ITT's indemnity obligations to Scotts until all other issues have been resolved.   Accordingly, if this Court abstains from exercising its jurisdiction, it could be years and years before Scotts sees any relief.  Filing here appears to be a logical choice and nothing suggest that Scotts has an improper motive, such as procedural fending or racing for *res judicata*, when it chose to file here.  This factor weighs in favor of this Court's exercise of jurisdiction.

### 4)   Would Hearing this Declaratory Judgment Action Increase the Friction Between the State and Federal Courts?

In determining if an exercise of jurisdiction would increase the friction between

state and federal courts three additional factors considered.  These factors are referred

to as the *Scottsdale* factors:[8]

> (1) whether the underlying factual issues are important to an informed
> resolution of the case; (2) whether the state trial court is in a better
> position to evaluate those factual issues than is the federal court; and (3)
> whether there is a close nexus between the underlying factual and legal
> issues and state law and/or public policy, or whether the federal common
> or statutory law dictates resolution of the declaratory action.

*Northland Ins. Co.*, 327 F.3d at 454.

Here the underlying suits are the asbestos product liability claims.  However, as

ITT argues, whether ITT has any duty to indemnify Scotts will turn on whether the

underlying asbestos claims are insurable occurrences.  If this Court decides to exercise

jurisdiction, it will have to decide whether asbestos claims are insurable occurrences as

defined by the Sale Contract.   This is a matter of state law.  However, the Sale Contract

states that it is to be construed according to the laws of New York.  The California court

is in no better of a position to interpret New York law than this Court. However, this is a

diversity case, and only matters of state law are being applied to any factual

determinations.  Consequently, this factor weighs in favor of abstention.[9]

---

[8] These factors are referred to the *Scottsdale* factors because they were set
forth in the case *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

[9] ITT also argues that if this Court exercises jurisdiction, it will have to decide
when the asbestos injuries occurred.  However, this is not the case.  The issue before
the Court is whether ITT has to indemnify Scotts for the defense of asbestos product
liability suits that arise prior to the Closing Date of the Sale Contract.  This Court is not
being asked to determine in which underlying actions ITT's duty is triggered.

12

**5) Whether an Alternative Remedy Exists that is Better or More Effective?**

ITT argues that the California court provides an alternative remedy that is either better or more effective than any remedy this Court can provide.  It maintains that the California court is already deciding whether the asbestos product liability claims are insurable occurrences; therefore, it is in a better position to decide whether ITT owes any indemnification obligation to Scotts.  However, ITT, in its amended complaint, asks the California court to hold off on any declaration as to its potential indemnification obligation until all the other issues in the California action have been resolved.  (ITT's 3d Amend. Cal. Compl., ¶ 211).  Accordingly, it could be years before the California court undertakes any resolution regarding ITT's obligation to Scotts.  ITT may have a present duty to indemnify Scotts and putting the issue off for an indeterminate amount of time detracts from any argument that the California court is able to provide a superior remedy.  Further, if this Court makes a declaration regarding ITT's indemnity obligation towards Scotts, there has been no evidence presented that shows that this declaration would interfere with the California court's ability to resolve the insurance carriers' duties owed to ITT.  This Court can provide a superior remedy to that of the California court; this factor weighs in favor of this Court's exercise of jurisdiction.

**V.  Expiration of the Obligations.**

ITT argues that any duty ITT had to indemnify Scotts expired six years after the Closing Date of the Sale Contract as stated in the sunset provision, § 8.6.  However, whether any duties are owed to Scotts has expired is a determination that can be raised later by the parties either in a motion to dismiss or in a motion for summary judgment.

13

This argument was not raised until ITT's reply brief objecting to the Magistrate Judge's report and recommendation, and Scotts has not had the opportunity to respond to ITT's contentions.  At the present time, this Court will not decide the issue.

**VI.  Conclusion.**

Overall, the *Bituminous* factors weigh in favor of this Court's continued exercise of jurisdiction in the matter.  Accordingly, the Magistrate Judge's April 8, 2005 Report and Recommendation (doc. 28) is **ADOPTED**.  Defendant's April 22, 2005 objections to the Magistrate Judge's Report and Recommendation (doc. 29) are **OVERRULED**.


                                        s/George C. Smith
                                        George C. Smith, Judge
                                        United States District Court

14

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE SCOTTS COMPANY,                     :

            Plaintiff,                     :       Case No. C2:03-cv-1082

            v.                             :       Judge Smith

ITT INDUSTRIES, INC.,                   :       Magistrate Judge Abel

            Defendant.                     :

## ORDER

This matter is before the Court on Defendant ITT Industries Inc.'s April 22, 2005 objections to the Magistrate Judge's report and recommendation on ITT's motion to abstain from jurisdiction (doc. 29).  Plaintiff The Scotts Company filed this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) seeking a declaration that (1) ITT Industries, Inc. is obligated to provide, or cause its issuers to provide, defense and indemnity to Scotts under the terms of the indemnity provision of the Sale Contract for losses and expenses incurred in connection with the product liability suits that have been filed and will be filed against Scotts, and (2) that the scope of any settlement agreement or release that Scotts entered into was limited to environmental cases and is not applicable to the products liability claims filed against it.

**I.  Overview.**

This declaratory judgment action was filed by The Scotts Company ("Scotts") against its former parent company, ITT Industries, Inc. ("ITT").  Scotts was sold by ITT to CDS Acquisition Corp. In 1986.  The Sale Contract contained an indemnity provision.

1

Several personal injury products liability suits have been filed against Scotts that allegedly arise from the sale of products during ITT's period of ownership. Scotts maintains that despite any potential insurance coverage, ITT is obligated to indemnify Scotts for the cost of litigating these claims. In 2003, ITT filed suit in California state court. The suit names approximately 40 insurance companies as defendants. ITT argues that this action should be stayed or dismissed because Scotts' claims are already before the California state court.

**II. Facts.**

Scotts filed this declaratory judgment action on November 24, 2003 in the United States District Court for the Southern District of Ohio. Jurisdiction is founded upon diversity of citizenship as Scotts is an Ohio corporation and ITT was organized under the laws of New York. From April 7, 1971 to November 24, 1986, Scotts was a wholly owned subsidiary of ITT. On November 24, 1986, ITT sold Scotts to CDS Acquisition Corp. The document governing the sale was titled "Agreement of Purchase and Sale of Capital Stock between CDS Acquisition Corp. and ITT Corporation" ("Sale Contract").

The Sale Contract includes a provision, section 17, entitled "Indemnity for Insurable Events." Scotts maintains that under this provision, ITT is required to "indemnify and provide, or cause to be provided by its insurers, a defense to Scotts for all losses arising out of 'insurable occurrences'" that occur on or before November 24, 1986.[1] (Compl., ¶ 8). The Sale Contract defines an insurable occurrence as "an

---

[1] The provision states:

occurrence that would customarily be insured against by corporations similarly situated

with and in businesses similar to Scotts, as it existed after November 24, 1986."

(Compl., ¶ 8).

      For the last several years, product liability lawsuits have been filed against

Scotts.  These suits allege that one or more of Scotts' lawn and garden products

contained asbestos, which is responsible, in whole or in part, for causing bodily injuries.[2]

(Compl., ¶ 9; Pl.'s Resp., p. 4).  Scotts denies liability for these claims and is defending

the lawsuits.

      In 2003, Scotts notified ITT of the civil actions, and Scotts maintains that "ITT has

refused to provide Scotts with any assurance that it will fulfill its contractual obligations

---

        (a) ITT shall indemnify and provide, or cause to be provided by its insurer, defense to the Purchaser and the Company for all Losses (as defined in Section 8.1) arising out of Insurable Occurrences (as described below) on or prior to the Closing Date, other than workers compensation claims in the State of Ohio, which are covered by section 8.  The Purchaser and the Company shall indemnify and provide, or cause to be provided by its insurer, defense to ITT for all Losses (as defined in Section 8.1) arising out of Insurable Occurrences after the Closing Date, except for occurrences for which ITT has indemnified the Purchaser and the Company pursuant to Section 8.1. "Insurable Occurrence" shall mean an occurrence which would customarily be insured against by corporations similarly situated with and in businesses similar to the Company, as the Company exists after the Closing.

(Sale Contract § 17(a)).

  [2] Scotts has been named as a defendant in asbestos related products liability lawsuits in Illinois, Texas, California, and Mississippi.  (Pl.'s Resp., p. 4).  Many of the suits either fail to mention a date of asbestos exposure or state that the exposure occurred between 1971 and 1986.

in connection with the Underlying Product Liability Claims." (Compl., ¶ 10).[3]  Scotts

claims that rather than indemnify it, it has received indications from ITT that ITT plans to

rely on another agreement entitled "Settlement and Release Agreement" to contest any

obligation to Scotts.  Scotts states that the release agreement only applies to

environmental claims and does not affect ITT's obligations for the product liability

claims.  (Compl., ¶ 11).

Scotts believes that the product liability claims are insurable occurrences under

the Sale Contract and seeks a declaration from this Court that (1) under the Sale

Contract, ITT is required to provide, or cause its insurers to provide, defense and

indemnity for pending and future products liability claims, and (2) the scope of the

Settlement and Release Agreement is limited to environmental claims and does not

apply to the product liability claims.  Scotts also seeks the costs of bringing this action

and any other relief that the Court deems just and proper.

ITT rejects any indemnity obligation by relying on another provision in the Sale

Contract.  Section 8 entitled "Indemnification" limits ITT's obligation to indemnify the

"Purchaser" for any claims that arise after the "Closing Date," November 24, 1986,

and/or claims filed six-years after the Closing Date because of the six-year limitation

contained in the sunset provision.[4]

---

[3]  Scotts has submitted an affidavit with their response motion that states that "ITT has refused, and continues to refuse, to acknowledge any indemnification obligation arising from the Sale Contract."  (Meyer Aff., ¶ 4).

[4]  Section 8.1 states the following:

4

ITT will indemnify and hold the Purchaser and the Company (and their respective directors, officers, and employees and affiliates other than any directors, officers or employees of the Company who, by acting in a willful or grossly negligent manner, caused, or violated the law in connection with, a Loss) harmless from and against any and all claims, liabilities, losses, damages, costs, and expenses, including reasonable counsel fees (collectively, "Losses"), arising out of, or relating to:

   (a) any failure or any breach by ITT of any representation or warranty, covenant, obligation or undertaking made by ITT In this Agreement,

   (b) any lawsuit, action, proceeding, investigation or inquiry affecting the Company commenced on or prior to the Closing Date,

   (c) any occurrence, conduct or condition existing on or prior to the Closing Date that

      (i) violates, is alleged to violate or gives rise to a claim under any law, rule, ordinance, judgment, order or decree relating to handling or disposal of toxic or hazardous materials, air or water pollution or otherwise relating to protection of or damage to the environment (an "Environmental Regulation"), provided that no reimbursement shall be made under this clause (c)(i) of any amount (A) paid in response to an order from a governmental authority of competent jurisdiction to cause any occurrence, conduct or condition affecting the business of the Company and existing on or prior to the Closing Date to comply with any Environmental Regulation, if such amount (x) pays for a capital improvement which does not address the problem cited or (y) was not paid to address specifically the problem cited, or (B) budgeted by the Company on or prior to the date hereof and referenced in Schedule VII (except to the extent that the amount of the Loss exceeds the amount budgeted); or

      (ii) is the basis for any common law tort, nuisance or similar claim in connection with which the Company is alleged to have released harmful, toxic or hazardous substances into the environment; or

      (iii) is the basis for a claim that the claimant contracted a disease as a result of exposure to any product of or raw material used by the Company, except to the extent that such a claim arises out of third party use of a product after sale resulting in an occurrence after the Closing Date;

   (d) any workers compensation claim in the State of Ohio relating to pre-Closing compensable occurrences.

Section 8.6 contains the sunset provision; it states in pertinent part:

5

Currently in California state court, there are two pending civil lawsuits that are at least tangentially related to this case. The first lawsuit was filed in 1991. The lawsuit is an insurance coverage action that includes more than 40 insurance companies. The key issue is coverage for environmental claims. In February 2003, ITT filed a second action.

That action involves the same 40 insurance carriers and seeks coverage for bodily injury and property damage losses arising from asbestos. The action, *Cannon Electric, Inc., v. Affliated FM Ins. Co.,* (Case No. BC 290354, L.A. Sup. Ct), was brought by ITT to recover "100% of the costs and expenses of the asbestos-related suits asserted against it and its subsidiaries." (David S. Cox Aff., ¶10).[5] Therefore, ITT argues that the state court action seeks the "the precise relief Scotts seeks" in this

---

Survival of Representations; Termination. The representations and warranties contained in this Agreement shall survive the Closing . . . . The indemnification obligations of any party under this Section 8, except with respect to represenations and warranties (which are governed by the preceding sentence) and the occurrences described in clause (b) of Section 8.1 (for which the indemnification shall survive until any lawsuit or other action is finally settled and not appealable), shall terminate and be of no further effect on the sixth anniversary of the Closing Date.

[5] For example, on November 19, 2004, the California court ordered an insurer of ITT, Wausau, to defend or reimburse defense costs under primary insurances policies it issued to ITT. The policies cover ITT and its subsidiaries for all asbestos bodily injury lawsuits that (1) claim that products of ITT or its subsidiaries exposed the plaintiff(s) to asbestos between December 31, 1958 through December 31, 1973 and (2) lawsuits that make the same allegations but do not specify exposure dates.

6

action.[6]  (Def.'s Mot., p. 5).  On February 18, 2005, the California court granted leave for

ITT to amend its complaint.  The amendment, for the first time in the litigation, made

Scotts a party to the suit, both as a plaintiff and as a defendant.  (Def.'s Mot., p. 5). [7]

ITT argues that the California litigation will determine whether the product liability

---

[6]  The first paragraph of the amended complaint states the following:

> Plaintiffs seek a declaratory judgment, pursuant to California Code of
> Civil Procedure Section 1060, that the defendants are obligated to pay
> the costs and expenses including, without limitation, the costs of
> investigation, defense and legal liabilities, arising from or in connection
> with claims, suits, actions, causes of action and demands asserted
> against plaintiffs or which may in the future be asserted against
> plaintiffs alleging exposure to products allegedly containing or
> incorporating elements, minerals or other substances, including without
> limitation silica sand, asbestos and other materials and allegedly
> manufactured, sold, used or distributed by plaintiffs (the "Underlying
> Suits").

(ITT's 3d Amend. Cal. Compl., ¶ 1).

ITT also argues that other duplicative litigation exists.  Scotts filed a lawsuit
against Wausau in the Ct. of C.P., Union County, in which Scotts is seeking defense
and indemnity coverage for allegedly the same product liability actions in this case.  *See
The Scotts Co. v. Employers Ins. of Wausau* (Case No. 2003 CV 0457, Ct of Common
Pleas, Union County).  (Def.'s Mot., p. 6).

Scotts states that the litigation against Wausau was brought because, despite the
order ITT obtained from the California court that stated that Wausau must defend ITT,
Wausau has not reimbursed Scotts for any of its defense costs for the product liability
claims.  Rather, Wausau maintains that Scotts and Wausau made an agreement in
which Wausau bought out Scotts' rights under the Wausau policies.  Scotts disputes
that such a buyout or agreement took place and has brought the Union County action
for bad faith and breach of contract.  (Pl.'s Resp., p. 5).

[7]  Interestingly, the leave to amend was granted 15 months after this action was
commenced and one day prior to ITT's filing of their reply brief for this Court to stay or
abstain.  ITT's reply states on page 3 that "Scotts is both a party plaintiff and a party
defendant to the Los Angeles Action."

7

lawsuits are insurable occurrences. Among other relief, ITT is seeking declaratory

relief and breach of contract claims for ITT's insurers' failure to provide coverage for the

Scotts product liability lawsuits.

**III. ITT's Arguments**

1. This Court should abstain from exercising jurisdiction based on the five factors stated in *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807 (6th Cir. 2004), and used by courts in Sixth Circuit to determine when abstention from a declaratory judgment action is appropriate.

2. This Court should consider the fact that any obligation owed to Scotts, expired on the sixth anniversary of the Closing Date of the sale of Scotts, and since the asbestos product liability claims were filed after the date contained in the sunset provision, Scotts' claim for indemnity from ITT must fail. (*See* Sale Contract § 8.6(b)).

**IV. Discussion.**

"The Declaratory Judgment Act provides that a court 'may declare the rights and

other legal relations of any interested party seeking such declaration." *Northland Ins.*

*Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 453 (6 th Cir. 2003) (quoting 28 U.S.C. §

2201(a)). Based on the permissive language used in the Act, a court's decision whether

to hear a declaratory judgment action is discretionary. *Bituminous Cas. Corp.*, 373 F.3d

at 812. The Sixth Circuit has identified five factors that are supposed to aid the court in

its determination of whether to exercise its jurisdiction. *Id.*

The five *Bituminous* factors are as follows:

(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would

8

increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Id.* at 813.

### 1) Would Judgment Settle this Controversy?

ITT argues that judgment by this Court would not settle the controversy. Scotts is seeking a declaration that (1) ITT is obligated to provide, or cause its issuers to provide, defense and indemnity to Scotts under the terms of the indemnity provision of the Sale Contract for losses and expenses incurred in connection with the product liability suits that have been filed and will be filed against Scotts, and (2) that the scope of any settlement agreement or release that Scotts entered into was limited to environmental cases and is not applicable to the products liability claims filed against it.

Scotts asserts that ITT is contractually bound to indemnify Scotts for the types of claims that were typically insured regardless of the outcome of the California action. In the California action, ITT is seeking to obtain insurance coverage for Scotts; however, ITT's potential duty to indemnify Scotts is separate from ITT's duty to cause its insurers to provide coverage to Scotts, hence the use of the word "or" in the Sale Contract's provision. A declaration that states that ITT either does or does not have a duty to indemnify Scotts would settle this portion of the controversy between the parties.

Scotts also entered into release agreements with one or more of the insurance carriers that had policies in force during the period of ITT's ownership. The carriers that entered into release agreements with Scotts have been identified by ITT as Wausau, Liberty Mutual and Pacific Employers. The scope of these release agreements is in

9

dispute. Scotts maintains that the releases only release the insurance carriers from liability that arise from environmental claims and the asbestos product liability actions do not qualify as environmental claims. ITT, on the other hand, maintains that these releases encompass environmental and asbestos related claims as well as any potential indemnity obligation of ITT. A declaration as to whether the releases involve the asbestos product liability actions would settle this portion of the controversy. This factor weighs in favor of this Court exercising jurisdiction.

### 2) Would the Declaration Serve a Useful Purpose in Clarifying the Parties' Legal Relations?

A declaratory judgment would serve a useful purpose in defining Scotts and ITT's legal relations. ITT relies on the *Bituminous* case when it argues that federal courts generally abstain from exercising jurisdiction when presented with contingent requests for declaratory relief that seek advance opinions regarding whether a party may owe an indemnity obligation if certain conditions are present. *See Bituminous Cas. Corp,* 373 F.3d at 812. *Bituminous* is factually distinguishable from the current case. In *Bituminous,* the federal declaratory action was being brought against the insurance carrier by the party being sued for the underlying claims. *Id.* ITT is not the insurance carrier. Moreover, the court in *Bituminous* stated a preference that the indemnity issue should be resolved in the court hearing the underlying claim. The California court is not hearing the underlying claims; it is hearing disputes between ITT and ITT's insurance providers. The underlying claims are the asbestos product liability actions being filed against Scotts throughout the country.

10

ITT may have a current obligation to provide a defense for Scotts in the underlying actions. Deciding whether ITT has a such a duty certainly clarifies the parties' legal relations. Moreover, a determination with regard to the scope of the release agreements may lessen any indemnity obligation owed to Scotts. This factor weighs in favor of this Court's exercise of jurisdiction.

**3) Is this Action being Used for "Procedural Fencing" or "*Res Judicata*"?**

ITT suggest that Scotts is attempting to undertake piecemeal litigation. Accordingly, both parties address whether Ohio is a convenient forum. ITT maintains that both ITT and Scotts have offices in Los Angeles and the insurance carrier paperwork is located in California because of the pending litigation. However, until February 2005, Scotts was not a party to the California action. Scotts filed this suit in this forum in November 2003. Ohio appears to be a logical forum choice. Because Scotts is an Ohio corporation, Ohio is a convenient and practical forum for deciding this issue. Ohio is also an efficient forum. Moreover, ITT's February 2005 amendment to its California complaint asked the California court to forego any decision on ITT's indemnity obligations to Scotts until all other issues have been resolved. Accordingly, if this Court abstains from exercising its jurisdiction, it could be years and years before Scotts sees any relief. Filing here appears to be a logical choice and nothing suggest that Scotts has an improper motive, such as procedural fending or racing for *res judicata*, when it chose to file here. This factor weighs in favor of this Court's exercise of jurisdiction.

**4) Would Hearing this Declaratory Judgment Action Increase the Friction Between the State and Federal Courts?**

11

In determining if an exercise of jurisdiction would increase the friction between state and federal courts three additional factors considered.  These factors are referred to as the *Scottsdale* factors:[8]

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether the federal common or statutory law dictates resolution of the declaratory action.

*Northland Ins. Co.*, 327 F.3d at 454.

Here the underlying suits are the asbestos product liability claims.  However, as ITT argues, whether ITT has any duty to indemnify Scotts will turn on whether the underlying asbestos claims are insurable occurrences.  If this Court decides to exercise jurisdiction, it will have to decide whether asbestos claims are insurable occurrences as defined by the Sale Contract.   This is a matter of state law.  However, the Sale Contract states that it is to be construed according to the laws of New York.  The California court is in no better of a position to interpret New York law than this Court. However, this is a diversity case, and only matters of state law are being applied to any factual determinations.  Consequently, this factor weighs in favor of abstention.[9]

---

[8]  These factors are referred to the *Scottsdale* factors because they were set forth in the case *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

[9]  ITT also argues that if this Court exercises jurisdiction, it will have to decide when the asbestos injuries occurred.  However, this is not the case.  The issue before the Court is whether ITT has to indemnify Scotts for the defense of asbestos product liability suits that arise prior to the Closing Date of the Sale Contract.  This Court is not being asked to determine in which underlying actions ITT's duty is triggered.

12

**5) Whether an Alternative Remedy Exists that is Better or More Effective?**

ITT argues that the California court provides an alternative remedy that is either better or more effective than any remedy this Court can provide. It maintains that the California court is already deciding whether the asbestos product liability claims are insurable occurrences; therefore, it is in a better position to decide whether ITT owes any indemnification obligation to Scotts. However, ITT, in its amended complaint, asks the California court to hold off on any declaration as to its potential indemnification obligation until all the other issues in the California action have been resolved. (ITT's 3d Amend. Cal. Compl., ¶ 211). Accordingly, it could be years before the California court undertakes any resolution regarding ITT's obligation to Scotts. ITT may have a present duty to indemnify Scotts and putting the issue off for an indeterminate amount of time detracts from any argument that the California court is able to provide a superior remedy. Further, if this Court makes a declaration regarding ITT's indemnity obligation towards Scotts, there has been no evidence presented that shows that this declaration would interfere with the California court's ability to resolve the insurance carriers' duties owed to ITT. This Court can provide a superior remedy to that of the California court; this factor weighs in favor of this Court's exercise of jurisdiction.

**V. Expiration of the Obligations.**

ITT argues that any duty ITT had to indemnify Scotts expired six years after the Closing Date of the Sale Contract as stated in the sunset provision, § 8.6. However, whether any duties are owed to Scotts has expired is a determination that can be raised later by the parties either in a motion to dismiss or in a motion for summary judgment.

13

This argument was not raised until ITT's reply brief objecting to the Magistrate Judge's report and recommendation, and Scotts has not had the opportunity to respond to ITT's contentions.  At the present time, this Court will not decide the issue.

**VI.  Conclusion.**

Overall, the *Bituminous* factors weigh in favor of this Court's continued exercise of jurisdiction in the matter.  Accordingly, the Magistrate Judge's April 8, 2005 Report and Recommendation (doc. 28) is **ADOPTED**.  Defendant's April 22, 2005 objections to the Magistrate Judge's Report and Recommendation (doc. 29) are **OVERRULED**.


s/George C. Smith
George C. Smith, Judge
United States District Court

14